## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENNETH McCULLOUGH,     )
                         )
             Plaintiff     )
                         )
     vs.                   )     Civil Action No. 06-514
                         )     Judge Gary L. Lancaster/
ERIC M. MILLER, Pa. Cor. Off.; T.     )     Magistrate Judge Amy Reynolds Hay
STANLEY, Pa. C.O.; LYNN     )
DAVENPORT, Pa. C.O.; N. NEAL, Pa.     )
Cor. Off.; F. DALEY, Pa. Cor. Off.     )
Witness; R. CULP, Pa. Cor. Off. Capt.;     )
SIMPSON, Pa. Cor. Off. Capt.; ELEANORE)
WEAVER, Pa Misconduct Hearing     )
Examiner/Judge; DAVID McCRAY, Pa.     )
Cor. Off.; KATY WIMBUSH, Pa. Cor. Off.;)
CHARLES M. SHANE, Pa. Cor. Off.;     )
MARLENE STEWARD, Pa. Cor. Off.;     )
DAVID GOOD, Pa. Cor. Off.; PAUL     )
STOWITZKY, Cor. Off.; CHRISTINA     )
SORBIN, Cor. Off.; LEE JOHNSON,     )
Cor. Off. (African American); HOLMES,     )
Cor. Off. Lt.; JOHNSON, Cor. Off.     )
(Caucasian); ROBERT S. BITNER, Pa.     )
Cor. Off. (Harrisburg); McCONNELL,     )
Pa. Cor. Off. Capt.; Any and all other     )
Respondets later added.     )
                         )
            Defendants     )     Re Dkt. [65]

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment, Dkt. [65],

be granted.

### REPORT

Kenneth McCullough ("Plaintiff") is a state prisoner who, at the time giving rise to this suit, was housed in the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh) and is serving a sentence of 10 to 20 years for Third Degree Murder arising out of the Court of Common Pleas of Philadelphia.

He has brought this Section 1983[1] civil rights suit, naming twenty defendants, all of whom are employees of the Pennsylvania Department of Corrections ("DOC"). The heart of Plaintiff's complaint is his allegation that he was the victim of excessive force on July 15, 2004 which directly involved only four of the twenty named defendants, namely, Corrections Officers Eric Miller, Lynn Davenport, N. Neal, and T. Stanley. The remaining Defendants are alleged to have either participated in the disciplinary action and/or appeals or, after he was placed in the RHU, to have spit in his food or to have condoned Plaintiff's food being spit on.

## A. Relevant Procedural and Factual History

Plaintiff is proceeding in forma pauperis and pro se. Because the original complaint purported to be a private criminal complaint, the Court directed Plaintiff to file an amended complaint that initiated a civil action. Dkt. [12]. Plaintiff filed his amended complaint, Dkt. [15], which is the operative complaint. Defendants filed an answer to the complaint, denying all

---

[1] Plaintiff does not specifically mention the Civil Rights Act, 42 U.S.C. § 1983, however, because he is seeking to vindicate his constitutional rights and he does not have a cause of action directly under the Constitution, a liberal reading of the complaint requires the court to construe his complaint as one invoking the court's jurisdiction pursuant to 42 U.S.C. § 1983. See, e.g., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."); Pauk v. Board of Trustees of City University of New York, 654 F.2d 856 (2d Cir 1981)(where a federal statute governing civil action for deprivation of rights provides a remedy, i.e., 42 U.S.C. § 1983, an implied cause of action grounded on Constitution is not available), overruling on other grounds as recognized in, Brandman v. North Shore Guidance Center, 636 F.Supp. 877, 879 (E.D.N.Y. 1986).

material allegations.  Dkt. [36].  The Court entered a scheduling order setting, inter alia, discovery deadlines.  Dkt. [37].

Thereafter, Plaintiff filed a "Statement of Facts and Legal Requests Detailed."  Dkt. [48]. The Court directed that this filing was inadequate to serve as Plaintiff's Pre-trial statement, and ordered that he file a Pre-trial narrative statement that conformed to the rules.  Dkt. [50].   Plaintiff then filed a Pre-trial narrative statement.

Defendants filed a motion for summary judgment, Dkt. [65], with evidentiary materials attached, a brief in support thereof, Dkt. [66], and a concise statement of material facts, Dkt. [67]. The Court ordered Plaintiff to file a response to the Motion for Summary Judgment.  Dkt. [68]. After Plaintiff was granted an extension of time in which to do so, Plaintiff filed his response. Dkt. [77].  However, that response contained no evidentiary material, nor was it sworn to.

## B.  Standard of Review -Summary Judgment

Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden to show or point out why there is no genuine issue of material fact. Walters ex rel. Walters v. General Motors Corp., 209 F.Supp.2d 481, 484 (W.D. Pa. 2002). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States  v. City of Hoboken, 675 F.Supp. 189, 192 (D.N.J. 1987).

The manner of carrying the moving party's initial burden varies, depending on whether the moving party or the non-moving party bears the burden of proof at trial with respect to the legal issue. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)("The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.").

Instantly, the exhaustion of administrative remedies, one of the affirmative defenses raised by the Moving Defendants, is an issue for which the Moving Defendants would bear the burden of proof. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Hence,

> [w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." [Celotex] at 331 (Brennan, J., dissenting); see also Chanel, Inc., 931 F.2d at 1477. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. See id. at 1477. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact." Id.; see also Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 331 (Brennan, J., dissenting).

U.S. v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

In contrast,

> [w]hen the nonmoving party has the burden of proof at trial, the moving party is not required to "support its motion with affidavits or other similar material negating the opponent's claim," Celotex, 477 U.S. at 323, in order to discharge this "initial responsibility." Instead, the moving party simply may "'show[ ]'-that is, point[ ] out to the district court –- that there is an absence of evidence to support the nonmoving party's case." Id. at 324. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating

that the nonmoving party will be unable to prove its case at trial. Id. at 331
(Brennan, J., dissenting). If the moving party shows the absence of a triable issue
of fact by either method, the burden on summary judgment shifts to the nonmoving
party, who must show that a genuine issue remains for trial. Fed.R.Civ.P. 56(e);
Chanel, Inc. v. Italian Activewear [of Florida], Inc., 931 F.2d 1472, 1477 (11th Cir.
1991). If the nonmoving party fails to "make a sufficient showing on an essential
element of her case with respect to which she has the burden of proof," Celotex,
477 U.S. at 323, the moving party is entitled to summary judgment.

Id., at 1437-38 (footnotes omitted).  In either case, regardless of who bears the burden of proof at

trial, the moving party must show no genuine dispute over a material fact.

"The substantive law governing the dispute will determine which facts are material, and

only disputes over those facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." DeHart v. Horn, 390 F.3d 262, 267 (3d

Cir. 2004)(internal quotations omitted).  The evidence on summary judgment presents a genuine

issue of fact only if the evidence is such that a reasonable jury could return a verdict for the non-

moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  "Where the record taken as

a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).  The inquiry involves determining whether the evidence pointed to by the parties presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.  See Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir.

1990)(quoting Anderson, 477 U.S. at 251-52).  If a court, having reviewed the evidence with

this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly

probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

In reviewing the summary judgment evidence, the Court has no duty to search the record

for triable issues; rather, it need rely only on those portions of the evidentiary record to which the nonmoving party directs its attention.  Guarino v. Brookfield Tp. Trustees, 980 F.2d 399, 404 (6th Cir. 1992).

In deciding a motion for summary judgment, the judge's function is not to determine the truth of the matter, but rather to determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.  In short, the summary judgment motion is an evidence testing device to see if there is sufficient evidence to support a party's position with respect to an issue for which that party bears the burden of proof at trial so as to justify holding a trial.

## C.  Discussion

### 1.  Failure to Adduce Evidence in response or point to evidence

The Defendants properly supported their summary judgment motion with evidentiary materials and so met their initial summary judgment burden.   In response, Plaintiff filed two documents.  First, Dkt. [69], which was not responsive to the summary judgment as such, but only argued that the Defendants misstated when Plaintiff had mailed in his pre-trial statement. Moreover this filing was not sworn to.

The second filing was Dkt. [77], which also was not sworn to but did have some evidentiary materials attached thereto.  However those evidentiary materials merely established that Plaintiff had a history of mental health problems and was in fact dual diagnosed, meaning that he had both a drug and/or alcohol dependency diagnosis as well as a mental health diagnosis. Dkt. [77-2] at 1 to 6.  In addition, the filing contained photocopied pictures of the minor injuries Plaintiff sustained as a result of the physical altercation, Dkt. [77-2] at 7 to 8, namely, an abrasion under the right eye, a slight laceration noted on the upper right eyelid approximately 1/4 inch long,

a small laceration on the left index finger and an abrasion to the left knee which was approximately 1 centimeter in diameter. Dkt. [65-2] at 26. None of these evidentiary materials carries Plaintiff's burden to show a genuine issue of material fact with respect to establishing his Eighth Amendment claim.

Moreover, any of Plaintiff's statements in these two filings, being unsworn to, are simply insufficient to create a genuine issue of material fact. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17 (1970)("This statement, being unsworn, does not meet the requirements of Fed.Rule Civ.Proc. 56(e)"); Vivid Technologies, Inc. v. American Science & Engineering, Inc., 200 F.3d 795, 812 (Fed. Cir. 1999) ("Unsworn statements set forth in a brief or memorandum of law submitted by a party generally are not proper summary judgment evidence."); Thornton v. United States, 493 F.2d 164, 167 (3d Cir. 1974) ("A statement in a brief or in oral argument does not constitute evidence."); Chaiken v. VV Pub. Corp., 119 F.3d 1018, 1033 (2d Cir. 1997) ("Moreover, their unsworn letters do not satisfy the requirements of Fed.R.Civ.P. 56(e) and therefore cannot defeat VV's motion for summary judgment."). In light of the foregoing, and in the face of the Defendants' carrying their initial summary judgment burden, for this reason alone, the Defendants are entitled to summary judgment because Plaintiff has failed to point out in the record the existence of any evidence that supports his Eighth Amendment claim.

Furthermore, it is not the court's burden to scour the record to search for such evidence. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992).

In the alternative, the Court will examine the record, in a light most favorable to Plaintiff,

and consider his verified amended complaint, Dkt. [15],[2] which is the operative complaint, as evidence proffered by Plaintiff in response to the Defendants' summary judgment motion. Even considering the verified amended complaint, the Court concludes that the Defendants are still entitled to summary judgment.

## 2. Failure to Exhaust As to Four of the Defendants

The Defendants point out that there is no genuine material factual dispute over Plaintiff's failure to exhaust his administrative remedies as to four of the defendants, namely, Lee Johnson, C.O. Christina Sorbin, C.O. Holmes and C.O. Johnson. We agree.

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). There is no dispute that this provision applies herein.

There is also no dispute that the available administrative remedy for Plaintiff is found in DC-ADM 804. That DOC policy sets up a three stage administrative remedy with an initial grievance filed to the grievance officer of the individual prison. If the response, called an "Initial Review Response" does not satisfy the prisoner, then the prisoner must appeal to the Superintendent/ Manager of the prison facility. If the Superintendent's response does not satisfy the prisoner, then the prisoner must appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), who would issue a final decision. This is the last step in the process.

---

[2] Paters v. United States, 159 F.3d 1043, 1052 (7th 1998)("*a verified complaint . . . would have the same force and effect as an affidavit...*")(quoting Williams v. Browman, 981 F.2d 901, 905 (6th Cir. 1992)(emphasis added by the Paters court)

The Moving Defendants provided an affidavit from Dorina Varner, Dkt. [65-2] at 2 to 3, wherein she attests that she is the Assistant Chief for the SOIGA and that, in the ordinary course of business, the DOC maintains records of all grievances and appeals in a hard copy and a computer database. She further attests that she reviewed those files and those records reveal that Plaintiff did not file any grievances against the four above-mentioned defendants. This evidence was sufficient to meet the Defendants' initial burden under summary judgment. Furthermore, Plaintiff failed to argue that he had exhausted, let alone offer any evidence to counter the Defendants' evidence of non-exhaustion with evidence of his own that he actually did exhaust any claims against these four defendants. Hence, the Court agrees with the Defendants' argument and so, summary judgment should be granted as to all of Plaintiff's claims against Defendants Lee Johnson, Holmes, Sorbin and the other C.O. Johnson. Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004)(failure to name a person in the grievance whom the prisoner-plaintiff eventually sues constitutes a procedural default of any claims against that person); Williams v. Pennsylvania, Dept. of Corrections, 146 Fed.Appx. 554, 557 (3d Cir. 2005) ("his [i.e., the prisoner's] failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."); Buehl v. Beard, Civ. A. No. 03-1313, 2007 WL 1830616 (W.D.Pa. June 25, 2007).[3]

---

[3] For the reasons stated in Buehl, the Supreme Court decision in Jones v. Bock, 549 U.S. 199 (2007), which held that the Michigan Department of Corrections rules, governing inmate grievances, did not require that the prisoner name individuals whom he eventually sued, is distinguishable from the present case because the Third Circuit Court of Appeals already has held in Spruill v. Gillis, that the Pennsylvania Department of Corrections rules, governing inmate grievances, does require such. The Jones court specifically contemplated that this would be the case, i.e., various states' rules would yield various outcomes. Jones, 127 S.Ct. at 923 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's

(continued...)

3. **Eighth Amendment Claims**

Plaintiff's claim against CO Miller is that "after having words with this Defendant I was told to go and get my medication. When I turned my back this Defendant put me in a choke hold until I nearly passed out[,] he then pushed me down a flight of stairs made of concrete and steel." Dkt. [15] at 6.

Plaintiff's complaint against the three others allegedly involved on the date of the incident are as follows: (1) Plaintiff alleges that while he was lying at the bottom of the steps, Defendant Stanley spit in his face and repeatedly kicked him; (2) that while trying to get up from the floor at the bottom of the steps, Defendant Davenport continued to kick Plaintiff; and (3) Defendant Neal stomped Plaintiff, calling him a worthless inmate. Plaintiff claims that all of these defendants engaged in excessive force.

The landmark Supreme Court case in the Eighth Amendment excessive force area is Hudson v. McMillian, 503 U.S. 1 (1992). The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6-7. In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim. See id. at 22-23 (Thomas, J., dissenting), wherein Justice Thomas wrote:

In the context of claims alleging the excessive use of physical force, the Court then

---

[3](...continued)
procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.").

asserts, the serious deprivation requirement is satisfied by no serious deprivation at all. 'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.' Ibid. Ascertaining prison officials' state of mind, in other words, is the *only* relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . . The sum and substance of an Eighth Amendment violation, the Court asserts, is 'the unnecessary and wanton infliction of pain.' This formulation has the advantage, from the Court's perspective, of eliminating the objective component.

(some citations omitted and quotation marks modified). Accord Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000)("In Hudson, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' . . . , the latter kind of claim has no such requirement").

Accordingly, to establish an Eighth Amendment excessive force claim, the plaintiff must only adduce evidence that the force used was applied not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm.[4]

Although it is true that de minimis use of **force**, which is itself not repugnant to human decency, does not state an Eighth Amendment claim of excessive force, it does not necessarily

---

[4] This is not to say that a findfinder at trial must disregard the extent of the injuries suffered by a plaintiff. As the Supreme Court observed in Hudson:

Under the Whitley approach, the extent of injury suffered by an inmate is one factor that **may** suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." 475 U.S. at 321. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." Ibid. The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."

Hudson, 503 U.S. at 7 (emphasis added).

follow that infliction of de minimis **injury** fails to state an Eighth Amendment excessive force claim. See, e.g., Hudson, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, **provided** that the use of force is not of a sort 'repugnant to the conscience of mankind.'")(emphasis added); Id. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See Whitley, supra, 475 U.S. at 327. This is true whether or not significant injury is evident."); Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) ("*de minimis* injuries do not necessarily establish *de minimis* force.").

### (a) Defendants Davenport, Stanley and Neal

With the foregoing standards in mind, we consider whether Plaintiff has carried his burden to show a genuine issue of material fact as to his Eighth Amendment claim of excessive force.

Defendants proffered evidence that the entire incident of the physical altercation, from beginning to end, took only 3 minutes, i.e., from 7:12 A.M to 7:15 A.M. Dkt. [65-2] at 16 to 17 & 18 to 19. There is also evidence that Corrections Officers Stanley, Davenport and Neal only arrived at the scene **after** McCullough and Plaintiff were already physically engaged with each other in an altercation. Dkt. [ 65-2] at 19 (Officer Davenport arrived after the physical altercation had already begun); id., at 21 (Officer Stanley arrived after hearing a commotion to find "inmate McCullough and Officer Miller in each other's grasp"); id., at 22 (Officer Davenport arrived at scene to find Miller wrestling with Plaintiff); id., at 35 (there were "several incident reports from Officers who arrived on scene after the initial incident. Their reports are limited to events that transpired after Miller and McCullough landed at the bottom of the stairwell."). Upon arriving on

the scene, such officers could not have known who was the aggressor, they could only have known that a Corrections Officer and a prisoner were engaged in an altercation. The Defendants further offer evidence that Plaintiff was repeatedly ordered to stop resisting and to cuff up. Dkt. [65-2] at 19. Indeed, in his complaint, Plaintiff himself concedes that he tried to get up from the floor in the course of the altercation. He did so notwithstanding orders of the Corrections Officers. See also Dkt. [65-2] at 37 (Plaintiff's written version of the events wherein he states that after he had landed at the bottom of the steps, "I felt someone in front of me[,] in back of me, and swining [sic] at my arms while I was trying to get my equilibrium together so I could stand up but I was rushed to the ground.").

In light of this evidence, the court concludes that no reasonable jury could find that the three Defendants who came upon the scene after the altercation had already begun, had engaged in excessive force. Even viewing the record in a light most favorable to the Plaintiff, the force alleged in the complaint and apparently used by the three defendants to attempt to subdue Plaintiff, who, for all appearances to them, was engaged in a physical altercation with a corrections officer, and who was refusing orders to both quit resisting and to cuff up could not be deemed excessive.

What of the allegation that Defendant Davenport spit on Plaintiff? If, as we conclude, no reasonable juror could find the use of the physical force by the three defendants was excessive, then the alleged spitting by one of these three, i.e., C.O. Davenport, cannot cause such non-excessive physical force to transform into excessive force in violation of the Constitution or otherwise violate the Eighth Amendment. See, e.g., Gill v. Tuttle, 93 Fed.Appx. 301, 303 (2d Cir. 2004) (unpublished) (finding that prison guard spitting on prisoner was de minimis use of force

and did not violate Eighth Amendment);  Williams v. Gobles, 211 F.3d 1271 (Table), 2000 WL

571936 (6th Cir. 2000)(affirming District Court's sua sponte dismissal of a claim by a prisoner that

a corrections officer, "Defendant Gobles spit at him, threatened him, and called him a 'nigger'

several times in June of 1998, in violation of his rights under the Eighth Amendment" for failure

to state a claim upon which relief could be granted);  DeMallory v. Cullin, 855 F.2d 442, 444 (7th

Cir. 1988)("As for the spitting incident, the [District] court ruled that 'a correctional officer

spitting upon a prisoner does not rise to the level of a constitutional violation.'  Id. at 3.  We agree.

. . ."); Zavala v. Barnik, 545 F.Supp.2d 1051, 1059  (C.D.Cal. 2008) ("Plaintiff's third claim

alleges that Defendant Barnik violated Plaintiff's rights by 'spitting onto/into Plaintiff's face.'

(SAC 3.)  However, a one-time incident of spitting, while certainly deplorable, does not rise to the

level of a constitutional violation."); Greene v. Mazzuca, 485 F.Supp.2d 447, 451 (S.D.N.Y.

2007) ("Accepting as true Greene's allegations that he was yelled and spit at, and threatened with

time in the SHU, none of these actions rise to the level at which prevailing doctrine sets the

constitutional bar to establish cruel and usual punishment in this regard.").

       Even less so does the alleged use of verbal abuse by Defendant Neal, who is accused of

calling Plaintiff a "worthless inmate," constitute the use of excessive force or otherwise violate

the Eighth Amendment.  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding verbal

harassment generally does not violate the Eighth Amendment); Ivey v. Wilson, 832 F.2d 950,

953-55 (6th Cir. 1987) (holding that verbal abuse, harassment, or arbitrariness by prison officials

toward an inmate does not qualify as punishment within the meaning of the Eighth Amendment);

Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding that verbal harassment or abuse,

where sheriff laughed at plaintiff and threatened to hang him, was not sufficient to state a

constitutional deprivation under 42 U.S.C. § 1983); Partee v. Cook County Sheriff's Office, 863 F.Supp. 778, 781 (N.D.Ill. 1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment).

Hence, the three Defendants, i.e., Stanley, Davenport, and Neal are all entitled to summary judgment.

### (b) Defendant Miller

As to Defendant Miller, the evidence of record provided by Defendants indicates that Defendant Miller's version of the events was that Plaintiff had missed an opportunity to leave his cell when the cell door was unlocked and afterwards the cell door was re-locked by Miller, locking Plaintiff in the cell, and Plaintiff was upset about this. Shortly thereafter, Miller permitted Plaintiff out of his cell so as to be able to get his medication and that is when Plaintiff approached Miller, loudly complaining about being locked in his cell and his need to go get his medication. After Miller told Plaintiff to go get his medication, Plaintiff became more agitated and verbally abusive, saying "You, don't lock me down." Dkt. [65-2] at 8. At that time, Miller could see Plaintiff clench his fist and begin to turn towards Miller, who ordered Plaintiff to cuff up but Plaintiff refused. Miller then called "trouble" on the radio and attempted to restrain Plaintiff and in doing so, both he and Plaintiff fell down the steps and, upon landing at the bottom of the steps, Miller ordered Plaintiff to put his arms behind his back and cuff up but Plaintiff refused. Miller again attempted to restrain Plaintiff while Plaintiff swung at Miller and hit Miller with both fists. Miller then got Plaintiff in a head lock and held him down and other officers arrived on the scene to help control Plaintiff. Dkt. [65-2] at 8 to 9.

Given that the Defendants supplied this evidence and, if believed this, evidence would not

support an Eighth Amendment excessive force claim, the Defendants have met their initial summary judgment burden to show entitlement to summary judgment as to Defendant Miller. Because, as noted above, Plaintiff failed to adduce any **evidence** in response to the summary judgement motion, the Court is entitled to take the record as presented by the Defendants, which means that Defendant Miller is entitled to summary judgment on the evidentiary record as presented by the Defendants. <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 403 (6th Cir. 1992)("The non-moving party must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor."); <u>id.</u>, at 404 ("there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.' Dozens of other panels, many speaking in unpublished prisoner appeals, have dealt with the circumstance of a dispositive motion in want of a response and have consistently assumed without specific comment that a court's reliance on the facts advanced by the movant is proper and sufficient.")(citations omitted)(quoting, <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1480 (6th Cir. 1989)); <u>United States v. City of Hoboken</u>, 675 F.Supp. 189, 192 (D.N.J. 1987)("Once that [initial summary judgment] burden has been met [by the moving party to show no genuine issue of material fact], the nonmoving party must set forth 'specific facts showing that there is a genuine issue for trial,' or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.").[5]

### (c) Defendant Daley

---

[5] To the extent that the verified complaint could be considered to create a genuine issue of material fact with respect to Miller, the Court relies on the rationale that Plaintiff did not adduce evidence in response to the summary judgment motion nor point to the verified complaint as evidence to oppose the summary judgment motion.

As for Corrections Officer Daley, the only allegation against him in the complaint is that "This officer is a witness." Dkt. [15] at 6. Apparently, Plaintiff means by this that C.O. Daley witnessed the physical altercation. Merely being a witness cannot be a basis for liability under the Constitution. See Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("Brower v. Inyo County, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."), aff'd, 980 F.2d 724 (3d Cir. 1992) (Table). However, liberally construing the complaint, it may well be that Plaintiff is alleging that Defendant Daley failed to intervene to protect Plaintiff from an assault. Even so, Defendant Daley would still be entitled to summary judgment.

As one court has observed, in order to establish a constitutional violation for failure to intervene,

> a plaintiff must establish that: (1) the police officer failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge and (2) there was a "realistic and reasonable opportunity to intervene." See Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir.2002)

Fernandez v. Stack, No. 03-4846 , 2006 WL 777033, at *12 n.8 (D.N.J. March 27, 2006). Moreover, it is the Plaintiff's burden to adduce evidence of both requirements. See, e.g., id.("a plaintiff must establish. . . ."); Gainor v. Douglas County, Georgia, 59 F.Supp.2d 1259, 1289 (N.D. Ga. 1998)("plaintiff must proffer evidence that the officer in question had a reasonable opportunity to intervene.").

In conducting this inquiry as to whether Corrections Officers had a realistic and reasonable opportunity to intervene, courts consider many factors, including the temporal length of the

alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc. See, e.g., Swinyer v. Cole, No. C04-5348, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006)("By all accounts, Officer Cole's reaction to the comments made by Mr. Swinyer happened quickly and was short lived. By the time the other officers in the jail realized what was happening, Officer Cole had released his hold on Plaintiff and the incident was over."); Mitchell v. James, No. 4:04CV1068, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)("it was proper to consider the proximity of the officers to the officer who allegedly used excessive force, the nature of the officer's actions, whether there was a substantial risk of serious harm to the inmate, the inmate's actual injuries . . .").

Plaintiff has adduced no evidence at all as to Defendant Daley. He fails to adduce any evidence of when Corrections Officer Daley arrived upon the scene as to whether it was before McCullough and Plaintiff were already engaged in the physical altercation or only afterwards. Even if Daley was present prior to the physical altercation, Plaintiff fails to adduce any evidence of whether Officer Daley had a reasonable and realistic opportunity to intervene prior to the physical altercation. If Daley was present only after the physical altercation had already begun, Daley's failure to intervene then cannot serve as a basis of liability because where there is no violation, there is no duty to intervene and we have concluded that officers coming upon an altercation between a guard and a prisoner are entitled to use such force as to stop the prisoner from continuing to physically resist the officers' control and we have already concluded that the use of the force by the three defendants herein after the altercation had already begun could not be found to be excessive. Armbruster v. Marguccio, No. CIV.A. 05-344J, 2006 WL 3488969, at *8 (W.D.Pa. Dec. 4, 2006)("Because the force used in this case was not constitutionally excessive,

the other officers [sought to be held liable for failing to intervene] cannot be held liable for failure to intervene or protect.")(quoting Long v. Pend Oreille County, 2006 WL 2850011, at *10 (E.D. Wash. 2006), aff'd in part and rev'd in part, 269 Fed.Appx. 749 (9ᵗʰ Cir. 2008)). Hence, Daley's failure to intervene after the altercation had already begun, cannot render him liable. Given that Plaintiff has failed to adduce evidence from which a reasonable jury could find that Defendant Daley failed to intervene before the altercation because there is no evidence as to his reasonable opportunity to do so or because there is no evidence that the use of force by officers after the altercation had already begun was excessive, Daley is entitled to summary judgment.

### 4. Qualified Immunity as to Davenport, Stanley and Neal

Defendants do raise a qualified immunity defense as well. A "government official is entitled to qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Abdullahi v. City of Madison, 423 F.3d 763, 775 (7ᵗʰ Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)).

Although in the preceding analysis, the Court determined that the Defendants did not violate Plaintiff's Eighth Amendment right, the Court will assume, for the sake of argument, that Plaintiff's Eighth Amendment rights were violated by Miller's, Stanley's, Davenport's, and Neal's use of force and the Court will analyze the qualified immunity defense. Even assuming such, three of these Defendants would be entitled to summary judgment on the basis of qualified

immunity because it would not have been clear to a reasonable officer in the shoes of Stanley, Davenport and Neal that their actions violated Plaintiff's Eighth Amendment rights, given that, at the time they arrived upon the scene, Plaintiff and Miller were already engaged in a physical altercation, which reasonable officers could have perceived as resistance to C.O. McCullough's attempt to restrain Plaintiff and their split second decision to use force against Plaintiff in an attempt to restore order and to assist Defendant McCullough, was reasonable. Hence, as an alternative holding, these three Defendants are entitled to qualified immunity for all their actions.

### 5. Remaining Defendants

Plaintiff has filed this suit pursuant to 42 U.S.C. § 1983 in order to attempt to vindicate his Eighth Amendment rights. In order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted).

As to the remaining 11 Defendants, i.e., Culp, Simpson, Weaver, McCray, Wimbus, Shane, Steward, Good, Stowitzky, Robert Bitner, and McConnell, Plaintiff's main allegations against them are that **after** the physical altercation, they came to know of the facts surrounding the altercation via incident reports and disciplinary proceedings against Plaintiff, and investigations, and that they "acquiesced" therein. See, e.g, Dkt. [15] at 6 (Defendant Culp "had knowledge about the assault but exercised acquiescence and approved the false misconduct report by signing it."); id., at 8 (Robert Bitner "had knowledge about the falsified misconduct reports but exercised

acquiescence when he affirmed the sanctions.").   However, even accepting such allegations to be true, such would be insufficient to render these defendants liable as such knowledge **after** the fact and any actions or inactions taken **after** the alleged assault cannot be said to have been the "cause" of the Eighth Amendment violation.  Without such causation, there cannot be liability on the part of these defendants.  Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("Brower v. Inyo County, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."), aff'd,  980 F.2d 724 (3d Cir. 1992) (Table); Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.");  Moor v. Madison County Sheriff's Dept., 30 Fed.Appx. 417, 420 (6th Cir. 2002)("Timing is everything. Cochran did not learn any of these facts until Moor filed her complaint. Specifically, Cochran first learned of the incident on May 27, 1999, when he received a letter from Moor's attorney along with a courtesy copy of the Complaint.  After receiving the complaint, Cochran investigated the incident by questioning Arthur, who denied any wrongdoing, and he reviewed the 911 calls for assistance from the Shell station. . . .In fact, Moor's facts reveal that Cochran did not know of the incident [at the time of its occurrence] and therefore could not have implicitly acquiesced in it."); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997) ("Chief Robertson could not have undertaken any action to 'un-do' any alleged constitutional violation by Sergeant Krane.").

   This is true notwithstanding Plaintiff's invocation of the phrase "knowledge and acquiescence," which the Court takes to be an apparent reference to Rode v. Dellarciprete, 845

F.2d 1195, 1207 (3d Cir. 1988) and <u>Evancho v. Fisher</u>, 423 F.3d 347 (3d Cir. 2005). The language from <u>Dellarciprete</u> and <u>Evancho</u>, requiring "knowledge and acquiescence," requires not mere knowledge after-the-fact but knowledge that occurs **contemporaneously** with the violation and not after the violation has been completed so that failure to act can properly be called acquiescence in the violation. <u>See</u>, <u>e.g.</u>, <u>Evancho v. Fisher</u>, 423 F.3d at 353 ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had **contemporaneous**, personal knowledge of her transfer and acquiesced in it.")(emphasis added); <u>Smith v. Hewitt</u>, Civ. A. No. 07-35 Erie, 2008 WL 686903, at *4 (W.D.Pa. March 10, 2008) (immediately after citing to <u>Rode</u> and <u>Evancho</u>, for the standard of personal involvement and quoting the language of "actual knowledge and acquiescence" from <u>Evancho</u>, the Court held as follows: "Here, Plaintiff alleges that these six Defendants did nothing to remedy the situation after they became aware of it. This allegation, even taken as true, does not rise to the level of 'actual knowledge and acquiescence' as that term includes a component of contemporaneousness not alleged here. Plaintiff only alleges that these Defendants did nothing after they became aware of the alleged assault and that allegation fails to rise to the level of a constitutional violation.") (footnote omitted); <u>Hughes v. Eitner</u>, No. CIV. A. 05-463, 2007 WL 2597901, at *5 (W.D.Pa. Sept. 5, 2007)("the language from <u>Dellarciprete</u> and <u>Evancho</u> that requires 'knowledge and acquiescence' requires not mere knowledge after-the-fact but knowledge that occurs contemporaneously with the violation and not after the violation has been completed so that failure to act can properly be called acquiescence in the ongoing violation.").[6]

---

[6] Nor is there even an allegation let alone evidence that Defendant Miller or any other defendant involved in the physical altercation had engaged in a pattern of excessive force prior to the incident with
(continued...)

Here, it is undisputed that all of the knowledge of the physical altercation incident acquired by these 11 Defendants was acquired after the physical altercation incident was completed. Knowledge of the alleged violation **after** it ceased to exist could not serve as a basis of liability. This is true notwithstanding Plaintiff's conclusory allegations in the complaint that some of these 11 Defendants knew that the misconduct reports were false and/or themselves falsified reports after the fact. Any actions or inactions taken after the alleged assault can in no way be said to have caused the Eighth Amendment violation. Accordingly, Plaintiff has failed to show a genuine issue of material fact with respect to these 11 defendants having caused any Eighth Amendment violation. Hence, the 11 Defendants are entitled to summary judgment.

In the alternative, all of these 11 Defendants are entitled to qualified immunity because it would not have been clear to a reasonable official in their shoes that participation in the misconduct process and/or in the investigation after the fact, and even their alleged filing of false misconduct charges or approving thereof after the fact, violated clearly established federal law, in light of the above cases, concerning causation and in light of the cases holding that the filing of false misconduct charges does not state a claim upon which relief can be granted. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation

---

[6](...continued)
Plaintiff or even if any had engaged in such a pattern that the other Defendants were aware of such a pattern. See C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir.2000)("a plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he or she must also allege 'both (1) contempora-neous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval." ')(footnote omitted).

of a protected liberty interest."); <u>Williams v. Reynolds</u>, 198 F.3d 248 (Table), 1999 WL 1021856, at *2 (6th Cir. 1999) ("Williams's claims against Ellison fail to state an Eighth Amendment claim because neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment."); <u>Person v. Campbell</u>, 182 F.3d 918 (Table), 1999 WL 454819, at *1 (6th Cir. 1999) ("the filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983."); <u>Porter v. King</u>, No. Civ.A. 04-1228, 2006 WL 3490582, at *3 (W.D.Pa. Dec. 4, 2006)("To the extent that the operative complaint alleges merely that Defendant King filed a false disciplinary report against Plaintiff, the court would agree that such a claim fails to state a claim upon which relief can be granted."); <u>Nelson v. Com.</u>, No. Civ. A.97-6548, 1997 WL 793060, at *3 (E.D.Pa. Dec. 9, 1997) ("The filing of a false or unfounded misconduct charge against an inmate does not constitute a deprivation of a constitutional right.").

Accordingly, these 11 Defendants are entitled to summary judgment either based on the fact that they did not cause any Eighth Amendment violation or because they are entitled to qualified immunity for their actions.

## III. <u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by September 2, 2008 and responses are due seven (7) days thereafter in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/  *Amy Reynolds Hay*
United States Magistrate Judge

Dated:  13 August, 2008

cc:     The Honorable Gary L. Lancaster
        United States District Judge

        Kenneth McCullough
        CJ-3651
        SCI Fayette
        50 Overlook Drive
        LaBelle, PA 15450

        All Counsel of Record via CM-ECF